**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**JOHN B. NEWBERRY,**

Plaintiff,

v.

**BURLINGTON NORTHERN SANTA FE RAILROAD,**

Defendant.

Civil No. 00-260 (PAM/JGL)

**O R D E R**

---

APPEARANCES

James Hansing, Esq., for Plaintiff.

Rodney Honkanen, Esq., for Defendant.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on December 5, 2001 on Plaintiff's Motion to Compel Discovery (Doc No. 13). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

This lawsuit arises under the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act. Plaintiff worked for Defendant for over twenty years. In 1990 and 1993, Plaintiff sustained back injuries at work. In 1999, Plaintiff won a $75,000 disability award in an FELA action

FILED DEC 13 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

related to those injuries. Plaintiff has not worked for Defendant since November 16, 1998, but argues that he is still an employee who maintains his seniority rights. In the present action, Plaintiff seeks to be reinstated to his former light duty position with Defendant. Plaintiff states that he has sufficiently recovered from his injuries to allow him to perform light duty work for Defendant. Defendant responds that, based on Plaintiff's assertion at his FELA trial that he was unable to work, this issue is res judicata and Defendant has no obligation to rehire Plaintiff. In the instant motion, Plaintiff seeks an order compelling Defendant to provide more complete answers to interrogatories and document requests.

On August 1, 2001, Plaintiff served Defendant with his first set of interrogatories and document requests. Plaintiff agues that many of Defendant's responses are deficient. In particular, Plaintiff takes exception to Defendant's objections based on attorney-client privilege.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). Under our rules, parties are entitled to discovery on any matter, not privileged, which could reasonably lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to

request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). However, the Court may limit discovery when the "burden or expense of the proposed discovery outweighs the likely benefit." Fed. R. Civ. P. 26(b)(2).

**A. Plaintiff's Interrogatories No. 4 and 22**

At the motion hearing, the parties addressed these two interrogatories simultaneously. The Court will do likewise.

**1. Interrogatory No. 4**

Plaintiff's interrogatory No. 4 asks Defendant to:

> Identify all person who made or participated in the decision not to allow plaintiff to return to work after May 1999. For each person involved, describe his/her role in any such decision.

Defendant's answer asserts that Plaintiff's May 19, 1999 correspondence, which the Court assumes was his formal request for reinstatement, was forwarded to Defendant's Counsel and Defendant's Legal Department. According to Defendant, after review of "pertinent portions of the trial transcript, evidence introduced at trial and the pleadings," the attorneys decided that based on Plaintiff's representations during his FELA trial, he was estopped from seeking further employment.

Plaintiff argues that Defendant must supply the names of, and roles played by, all persons who participated in the decision. In addition, Plaintiff

asserts that these attorneys are now fact witnesses in the case which means that Plaintiff must be allowed to depose them.

The attorney-client privilege protects communications made between a lawyer and the client in confidence for the purpose of seeking, obtaining, or providing legal assistance. See Restatement (Third) of the Law Governing Lawyers § 118 (Proposed Final Draft 1996); Fed. R. Evid. 503.

The purpose of the privilege is "to encourage full and frank communications between attorneys and their clients," and "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 389, 391 (1981).

The Court finds that this interrogatory has only been partially answered. Defendant lists the documents it reviewed when making its decision not to rehire Plaintiff. All these documents are already available to Plaintiff and, therefore, have been produced. In this way, this case can be distinguished from Harding v. Dana Transp., Inc., 914 F. Supp. 1084 (D.N.J. 1996), which Plaintiff cites. In Harding, an attorney conducted an investigation into his corporate client's alleged violations of Title VII. See Harding v. Dana Transp., Inc., 914 F. Supp. 1084, 1089 (D.N.J. 1996). The court concluded that the attorney was not acting in his capacity as an attorney when he conducted certain aspects of his investigation and, therefore, the attorney-client privilege did not attach to any of

the communications involved or to documents created regarding the investigation. See id. at 1096.[1]

In the instant case, there is no question that Defendant's counsel was acting in his capacity as an attorney. Defendant sought legal advice regarding its obligation to rehire Plaintiff. In addition, the record does not indicate, and Plaintiff does not argue, that any documents other than the correspondence from Larry Stoik of Defendant's legal department were generated as a result of this inquiry. Defendant's counsel advised Defendant on a legal matter. This is the quintessential "giving of professional advice so one can act on it" mentioned in Upjohn.

However, although the communications are protected by the attorney-client privilege, the mere existence of the relationship and the parameters of such, including the identity of persons who participated in the meetings, are not protected. See Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, 66 (Section of Litigation, ABA 2001).

---

[1]The Court has reviewed the other cases cited by Plaintiff at the motion hearing and fails to see the relevance of Howard v. Burns Bros., Inc., 149 F.3d 835 (8th Cir. 1998); Wendt v. Walden Univ., Inc., 1996 WL 84668 (D. Minn. 1996); and Marquart v. McDonnell Douglas Corp., 859 F. Supp. 366 (E.D. Mo. 1994). While the Court agrees that under Capellupo v. FMC Corp., No 4-85-1239, 1988 WL 41398 (D. Minn. May 3, 1988), broad discovery is allowed in civil rights cases, it does not necessarily follow that the traditional attorney-client privilege should not be recognized.

Therefore, Plaintiff must identify all parties who participated in the decision.[2] Revealing the names of these people does not release confidential information. To the extent that non-attorneys were involved in the decision, Defendant must provide Plaintiff with information regarding their roles in the decision. The actual contents of attorney-client communications and discussions are, of course, privileged.

In addition, the Court finds that Defendant's counsel are not fact witnesses in this case. At the motion hearing, Defendant's counsel stated that they have no intention of calling any counsel as witnesses unless they are called upon regarding what transpired at the FELA trial, a remote possibility since Defendant has a transcript of the trial. Therefore, Plaintiff has no right to depose Counsel regarding this situation. Accordingly, Plaintiff's motion is granted only to the extent that Defendant must provide information regarding the identity of all parties who participated in the decision not to reinstate Plaintiff, whether or not those people are attorneys, and must provide information regarding the roles played by non-attorneys.

---

[2]Although Defendant's Answer does not provide a list of people who were involved in the decision (Def. Objections & Answers to Pl. First Interrogs. at 6), Defendant' motion papers provide the names of attorneys and paralegals who dealt with Defendant's request for legal advice regarding this situation. It may be that this is the complete list of people involved in the decision. If so, Defendant must so state in a proper interrogatory answer.

**2. Interrogatory No. 22**

Plaintiff's Interrogatory No. 22 asks Defendant to:

> State and describe what part was played by defendant's claim department and law department, including John Stilwell and defendant's attorney, in the decision not to allow plaintiff to return to work after May 1999.

Defendant responds that his interrogatory seeks information which is protected by the attorney-client and work product privileges. In addition, Defendant refers Plaintiff to its answer to Interrogatory No. 4. Defendant asserts that at all pertinent times it was preparing for litigation. Plaintiff does not rebut this argument.

Plaintiff argues that Defendant's response is deficient in that it does not provide details regarding the role Mr. Stilwell and the legal department played in the decision not to reinstate him.

The Federal Rules of Civil Procedure codify "the work product doctrine" and provide, in pertinent part:

> "[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3).

The Supreme Court has stated that the purpose of the doctrine is to prevent "unwarranted inquiries into the files and mental impressions of an

attorney." Hickman, 329 U. S. at 510. Documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" do not fall under the protection of the work product doctrine. Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970 amendment); see also Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1997).

The Court is unsure of John Stilwell's role in this case. Defendant stated that Mr. Stilwell is Defendant's Director of Claims. However, the Court is unsure whether Mr. Stilwell is an attorney. If he is an attorney, Defendant must provide the cursory information it was ordered to provide in response to Interrogatory No. 4 regarding his involvement in the decision not to reinstate Plaintiff. If, however, Mr. Stilwell is not an attorney, or was not acting in his capacity as an attorney at the time of the reinstatement decision, his impressions and documents are not protected by the attorney-client or work product doctrines and must be produced. Insofar as Plaintiff seeks to discover the "role" of the attorneys involved in the decision, the Court finds that any involvement of attorneys acting in their capacities as attorneys is protected by the work-product doctrine and attorney-client privilege. Therefore, what role these attorneys played and what positions they took during the relevant discussions is not discoverable. Thus, Plaintiff's motion is granted only to the

extent that Defendant must provide information relating to the role of non-attorneys in the decision not to reinstate Plaintiff.

**B. Plaintiff's Interrogatory No. 5**

Plaintiff's interrogatory No. 5 asks Defendant to:

> [i]dentify all persons who were provided a copy of plaintiff's letter of May 1999 requesting reinstatement.

Defendant's answer refers Plaintiff to its answer to Interrogatory No. 4, which listed people to whom the letter was forwarded. Defendant asserts that those are the only people to whom it provided a copy of Plaintiff's letter.

Although Defendant's answer could have been easier to understand, the Court finds that this interrogatory has been fully answered. To the extent that Plaintiff seeks correspondence between Defendant and its counsel, something that Plaintiff requested at the motion hearing, that information is protected by attorney-client privilege. Thus, this part of Plaintiff's motion is denied.

**C. Plaintiff's Interrogatory No. 15**

At the motion hearing, the parties indicated that there were no remaining issues regarding this interrogatory. Therefore, this part of Plaintiff's motion is denied as moot.

**D. Plaintiff's Interrogatory No. 19**

Plaintiff's Interrogatory No. 19 seeks to discover the following information:

a. Does defendant have a light duty program at its Northtown facility. [sic] If so, identify the person or persons who administered said program.

b. List the names and addresses of all persons employed at the defendant's Northtown yard since April 1, 1993, who have been allowed to work on a light duty basis.

**1. Part a**

In response to part a of this interrogatory, Defendant stated that light duty work is only offered as a temporary situation to employees recovering from injuries. Defendant expounded on that assertion by stating the following: "Light duty work is provided by an employee's supervisors, after consultation with defendant's medical department. Dr. Michael Jarrard is defendant's Chief Medical Officer." Defendant argues that the information sought in part a of the interrogatory is irrelevant because at Plaintiff's FELA trial, Plaintiff and his counsel admitted that there is no light duty program at Northtown. Defendant has provided the Court with the relevant portions of the trial transcript. In addition, Defendant has repeatedly stated that there is no light duty program at Northtown.

Plaintiff argues that this answer is deficient in that it does not identify any person who bears responsibility for the light duty program. In support of this interrogatory, Plaintiff asserted at the motion hearing that Defendant once stated that light duty work is only available on a temporary basis, then stated that light duty only applies to employees who sustained

injuries at work, and then stated that light duty applies to all injured employees. Plaintiff did not support these allegations. However, even if Defendant made these confusing statements, the Court does not find that they detract from Defendant's answer to Interrogatory No. 19. The interrogatory does not seek to discover whether such a program is only available to employees injured on the job. In any event, in this case such a distinction would be irrelevant since it is undisputed that Plaintiff was injured on the job.

Defendant has provided the name of its medical officer and has stated that supervisors provide light duty assignments. Defendant has continuously maintained that there is no formal light duty program to "administer." Therefore, Defendant contends that this interrogatory has been fully answered. The Court is not in a position to judge the "veracity" of Defendant's statements, and in the absence of concrete evidence to the contrary, it must assume that Defendant has complied with its discovery obligations regarding the existence and maintenance of a light duty program. Onwuka v. Federal Express Corp., 178 F.R.D. 508, 514 n.2 (D. Minn. 1997) (citations omitted); Marvin Lumber v. PPG Indus., Inc., 168 F.R.D. 641, 643 n.1 (D. Minn. 1996). Defendant need not supplement its answer to Interrogatory No.19a. Thus, this part of Plaintiff's motion is denied.

**2. Part b**

Defendant originally objected to disclosing information regarding employees who have been allowed to work in a light duty capacity on the basis of overbreadth and burdensomeness. At the motion hearing, Defendant asserted that it does not keep lists of employees who work light duty at Northtown. Therefore, Defendant would need to search through the employment records of over one thousand individuals to determine if any of them ever worked on a light duty basis. Defendant further argues that divulging this information would violate the privacy rights of Defendant's employees. Finally, Defendant argues that this information is irrelevant.

The dissemination of the personal information of non-parties is a "highly . . . intrusive act" which the Court should not order "lightly." See Raddatz v. Std. Cash Register Co., 177 F.R.D. 446, 448 (D. Minn. 1997). Before a court compels such production, the party seeking discovery of personnel information of non-party employees must demonstrate that the information is relevant and could not be obtained by "less obtrusive means of discovery." Id. (citations omitted). In Raddatz v. Std. Cash Register Co., the plaintiff sought the information of similarly situated employees to support his contention that his termination was part of a larger pattern of age discrimination. See id. at 447. The Court concluded that the plaintiff was entitled to redacted portions of personnel files. See id. at 448; see also Gatewood v. Stone Container Corp., 170

F.R.D. 455, 458 (D. Minn. 1996) (finding information related to similarly situated employees relevant to plaintiff's argument that his employer did not assess his work in the same way as it assessed the work of other employees).

In this case, the Court finds that Plaintiff has not demonstrated that the information sought is necessary to his case. Indeed, Plaintiff has not even attempted to explain why this information is relevant. Plaintiff cites Missouri Nat'l Educ. Ass'n v. New Madrid County R-1 Enlarged Sch. Dist., 810 F.2d 164, 166 (8th Cir. 1987) for the proposition that personnel information of similarly situated non-party employees is discoverable. However, in Missouri Nat'l the plaintiffs, laid off teachers, sought the information to rebut the claim that they were discharged because they had worse teaching records than other teachers. See Missouri Nat'l Educ. Ass'n v. New Madrid County R-1 Enlarged Sch. Dist., 810 F.2d 164, 166 (8th Cir. 1987). That case can be distinguished from the instant case. Although given the opportunity at the motion hearing to rebut Defendant's assertion that "he doesn't even tell us what he wants [the information] for," Plaintiff never stated why this information is relevant. Instead, Plaintiff merely responded that he is not seeking medical records of non-party employees. The Court declines to speculate or to make Plaintiff's arguments for him.

Although Plaintiff may feel that the names and addresses of similarly situated employees is not very invasive information, the Court agrees

with the Raddatz court that such information is highly personal and, absent any compelling argument to the contrary, irrelevant to the instant litigation. See Raddatz, 177 F.R.D. at 447 (citation omitted). Therefore, this part of Plaintiff's motion is denied.

**E. Plaintiff's Interrogatory No. 20**

Plaintiff's Interrogatory No. 20 reads as follows:

> Does the defendant allege or contend that the plaintiff could not perform the duties of his job? If the answer is in the affirmative, please identify:
> a. Those duties which the defendant assets that the plaintiff could not perform;
> a. The percentage of time on the job spent on those duties;
> b. What accommodations would need to be made for performance of those duties.

Defendant argues that this interrogatory is a "premature contention interrogatory" and that Plaintiff has the burden of proving he can perform light duty work at Northtown. Defendant further asserts that at Plaintiff's FELA trial, Plaintiff and his attorney stated that Plaintiff would never be capable of returning to work, even in a light duty capacity. Plaintiff responds that whether or not Defendant acknowledges Plaintiff's disability is relevant to this cause of action. In support of their respective positions, both parties cite Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1111-12 (8th Cir. 1995). In Benson, the court laid out the burdens of proof and persuasion in ADA cases. See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995).

The Court does not agree that under Benson Plaintiff's request is premature. The burdens of proof and persuasion are trial matters. During the discovery phase of litigation, parties are entitled to all non-privileged information which could reasonably lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1). In this case, Defendant's reasons for not reinstating Plaintiff are a key issue. Indeed the entire case may hinge upon Defendant's perception of Plaintiff's disabilities and the accommodations necessitated by those disabilities. It makes no difference that at trial Plaintiff will have the initial burden. During discovery, Plaintiff is entitled to all relevant information related to Defendant's defenses and claims. See id. Therefore, this part of Plaintiff's motion is granted and Defendant must provide a complete answer within thirty days.

**F. Plaintiff's Document Request No. 10**

Plaintiff's Document Request No. 10 seeks:

> [a]ll documents which defendant has used in the past or currently maintains relative to light duty programs.

Defendant objects to this request because, inter alia, it is vague and not restricted by any time period. Furthermore, Defendant again insists that it does not maintain a light duty program. At the motion hearing, Plaintiff stated that Defendant has admitted it has a light duty program and that based on "evidence so far" he believes such a program exists. Plaintiff offered no evidence to support these claims, other than a vague reference to something called the "Continuum Program." Defendant has repeatedly maintained, both in its

discovery responses and at the motion hearing, that it does not have a formal light duty program. As of 1999, Plaintiff admitted that Defendant did not have such a program. Once again, the Court must state that it is not in a position to judge the validity of Defendant's statements, and in the absence of concrete evidence to the contrary, it must assume that Defendant has complied with its discovery obligations regarding the existence and maintenance of a light duty program. See Onwuka 178 F.R.D. at 514 n.2; Marvin Lumber, 168 F.R.D. at 643 n.1. Thus, this part of Plaintiff's motion is denied.

### G. Plaintiff's Document Request No. 12

Document request No. 12 seeks:

> [a]ll internal communication, letters memos, [sic] correspondence or documents generated or used by defendant pertaining to plaintiff's request for rcinstatement after May 1999.

Defendant objects to this request because these documents are protected by the attorney-client and work-product privileges. Plaintiff asserts that Defendant must produce "any documents they were supplied or generated relative to the decision not to permit plaintiff to return to work." However, Plaintiff does not rebut the fact that documents have been prepared in anticipation of litigation.[3] Rather, Plaintiff argues that if counsel participated in

[3]In this respect, the instant case may be distinguished from Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir. 1997), which Plaintiff cites. In Simon, many of the documents at issue were prepared by non-lawyers and were not prepared in anticipation of litigation. See Simon v. G.D. Searle & Co., 816 F.2d 397, 401. (8th Cir. 1997).

the decision not to reinstate Plaintiff, counsel have become fact witnesses and "any documents passed between them and defendant's operation and/or claim departments are discoverable." Plaintiff cites no authority to support this claim.

The Court finds Plaintiff's argument unavailing. Plaintiff does not rebut the argument that Defendant sought the advice of its counsel regarding its reinstatement decision. The communication that passes between a client and its counsel when the client is seeking legal advice is precisely the communication that is protected by the attorney-client privilege. See Simon, 816 F.2d at 403. If the privilege was compromised every time a client acted on its attorney's advice, the privilege would cease to exist.

However, to the extent that internal documents exist which are not protected by the attorney-client privilege or that were not prepared in anticipation of litigation, Defendant must produce those documents. The Court finds it at least a remote possibility that people other than attorneys generated documents and correspondence related to this issue. To this end, Defendant is advised to remember that merely involving an attorney in normal business activities or transferring documents to an attorney or legal department does not make them privileged under the doctrine. See Peterson v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992) (citations omitted). With this caveat in mind, Defendant is ordered to revisit this document request and to provide any internal documents which are not protected by the attorney-client or

work product privileges, if they exist. Therefore, this part of Plaintiff's motion is granted only to the extent that Defendant must provide any non-privileged documents within thirty days, if they exist.

### H. Plaintiff's Request to Extend the Discovery Deadline

The pretrial schedule in this case set the discovery deadline as December 1, 2001. Plaintiff requests an extension of the discovery deadline to February 1, 2002, but gives no independent reasons for the request. Defendant argues that Plaintiff has not demonstrated the requisite good cause to extend the discovery period and that any delays in discovery are due to Plaintiff's dilatory practices.

The Court finds that good cause does not exist to extend the discovery deadline. Notwithstanding that decision, Defendant will have thirty days from the date of this Order to respond to outstanding discovery requests.

### I. Plaintiff's Request for Fees and Costs

Plaintiff's request for fees and costs is denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Plaintiff's Motion to Compel Discovery (Doc. No. 13) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order; and

(2) Defendant must comply with the Order and respond to any outstanding discovery requests by January 14, 2002.

Dated: December 12, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge