UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John B. Newberry,

Civ. File No. 00-260 (PAM/JGL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Burlington Northern Santa
Fe Railroad,

Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, Defendant's Motion is granted.

**BACKGROUND**

Plaintiff John Newberry was employed by Defendant Burlington Northern Santa Fe Railroad ("BNSF") as a machinist at BNSF's Northtown shop in Minneapolis. In 1990, he injured his lower back on the job. He returned to full-time work, but suffered another low-back injury in 1993. He again returned to full-time work after this injury. Because railroad employees are not eligible for state workers' compensation, in 1996 Newberry sought compensation for his injuries under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 et seq. At approximately the same time, Newberry was restricted to light-duty work, and BNSF provided him with a helper to perform many of his duties and allowed him to work only four to six hours per day. In 1998, during the pendency of Newberry's FELA

FILED MAR 2 9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAR 2 9 2002
DEPUTY CLERK

case, Newberry decided that even light duty was too much for him, and he stopped working altogether. He has not returned to BNSF.

Newberry's FELA claims were tried to a jury before the Honorable John R. Tunheim of this Court in late February 1999. During the trial, Newberry's treating physicians testified to the extent of his physical limitations. These physicians agreed that Newberry was unable to perform the duties of a machinist, even with the accommodations BNSF had provided. One of Newberry's expert witnesses was a rehabilitation counselor. This witness opined that Newberry could not work full time at any job, and that he was incapable of "sustained occupational activity." (Tr. at 38.)

Newberry himself testified that, even working only four to six hours and having a helper to perform most of his job functions, he was unable to work. His counsel reiterated this position in closing arguments, telling the jury that all of Newberry's doctors had told him to "get out of railroading." (Honkanen Aff. Ex. 28 at 24.) The jury ultimately awarded Newberry more than $250,000 in damages. This amount was reduced by 70% because of Newberry's contributory negligence, resulting in a net award of approximately $76,000. Newberry's earnings at BNSF were between $20,000 and $25,000 per year.

In May 1999, Newberry sought reinstatement to his job as a machinist with BNSF. To support his request, he forwarded to BNSF a letter from his chiropractor, which stated that Newberry could return to work with the same restrictions and accommodations that were in place in November 1998. (Honkanen Aff. Ex. 12.) Newberry later testified, however, that

the chiropractor had not treated him for more than four years prior to writing this letter. (Newberry Dep. at 21-22.) Indeed, Newberry was examined by a neurologist in April 1999, who noted that Newberry was not capable of returning to his previous job at BNSF. (Honkanen Aff. Ex. 14.)

At approximately the same time that Newberry was seeking reinstatement, he applied for Railroad Retirement Board disability benefits. One of the physicians who testified at Newberry's FELA trial submitted a doctor's statement to the Retirement Board, opining that Newberry was "permanently disabled and . . . unable to return to work at the railroad." (Id. Ex. 15.) In response to the statement, "My condition prevents me from working now," in the application for disability benefits, Newberry responded, "Yes." (Id. Ex. 21.) Newberry signed this application under penalty of perjury on August 24, 1999. He was ultimately awarded disability benefits by the Retirement Board and, according to BNSF, he continues to receive those benefits.

On June 14, 1999, before BNSF officially responded to Newberry's request for reinstatement, Newberry filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). This charge claimed discrimination because BNSF had failed to reinstate Newberry "to his previous job as a machinist."[1] (Id.

[1] In his Complaint, Newberry also claims that BNSF violated the ADA by failing to transfer him to a different job. His failure to make this claim in his EEOC charge might preclude him from raising that claim here. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1997) (precluding Title VII plaintiff from raising claim that was not "like or reasonably related to" claims described in EEOC charge.) However, given the Court's resolution of the judicial estoppel

Ex. 16.) The EEOC dismissed the charge in November 1999.

In February 2000, Newberry filed the instant action, claiming that BNSF discriminated against him on the basis of a disability in violation of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). BNSF contends that Newberry is estopped from claiming that he can work at his previous job because of his representations during the FELA trial, and now seeks summary judgment on Newberry's discrimination claims.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of

issue, the Court need not consider whether Newberry is precluded from raising his failure-to-transfer claims here.

material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

BNSF argues that judicial estoppel precludes Newberry from taking a position in this litigation that is inconsistent with the position on which he prevailed in a prior litigation. According to BNSF, Newberry's contention that he is able to return to his job as a machinist is inconsistent with his representations at the FELA trial that he was completely disabled and not capable of returning to the railroad.

The doctrine of judicial estoppel prevents a party from asserting a position in a court proceeding that contradicts or is inconsistent with a position successfully put forward in an earlier proceeding. Delgrosso v. Spang & Co., 903 F.2d 234, 241 (3rd Cir. 1990). At first blush, this would seem to be a textbook case for the application of judicial estoppel. Newberry claimed in his FELA trial that he was completely unable to work and he won a significant damages award in that trial. Now Newberry is contending that he can in fact work, a position that would seem to directly contradict not only his previous position, but also the position he subsequently took before the Railroad Retirement Board. The analysis of judicial estoppel, however, is complicated by the Supreme Court's recent decision in Cleveland v. Policy Management Systems Corporation, 526 U.S. 795 (1999). In Cleveland,

the Supreme Court determined that an employee was not judicially estopped from pursuing an ADA claim, which is premised on an ability to work with reasonable accommodation, despite the fact that she had applied for and received Social Security Disability Insurance benefits ("SSDI"), which are premised on an inability to perform any substantial gainful activity.

According to the Court in Cleveland, applying judicial estoppel in such a case is inequitable because the receipt of SSDI does not take into account the availability of reasonable accommodation, while the receipt of ADA damages depends in large part on the provision of reasonable accommodations to a disabled employee. Id. at 803. However, the Court acknowledged that, unless the employee can offer an explanation as to why her claim of total disability in her SSDI application is consistent with her allegations in an ADA lawsuit, the employee's ADA claims cannot survive a motion for summary judgment. Id. at 806.

In the instant case, the Cleveland decision means that the application of judicial estoppel is not appropriate without an evaluation of Newberry's FELA claims and any explanation he has offered as to how those claims are consistent with his ADA allegations. Instead of attempting to explain the apparent inconsistency, however, Newberry argues that there is no inconsistency. He baldly asserts that he did not claim total disability in the FELA trial, but he offers absolutely no citation to the transcript or to any other portion of the record to support that assertion. Newberry's claims in the FELA trial are exactly the opposite of his

claims in this ADA case. In the trial, he and his expert witnesses testified that, even with the accommodations he was given, he was unable to work at all. Now he claims that, with accommodations, he can work. Newberry has failed to offer a sufficient explanation for this glaring inconsistency, and therefore summary judgment is appropriate.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court determines that Defendant is entitled to summary judgment on Plaintiff's claims. Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Doc. No. 34) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 29, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*